## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ANA [LORENA] ALONZO [ALCARAZ] de PACHECO, and JOSE ANGEL PACHECO, | § § § § | |
| Plaintiffs, | § § § | |
| v. | § § | CIVIL ACTION NO. B-06-094 |
| MARTHA N. MARTINEZ, d/b/a MARTINEZ BOOKKEEPING SERVICES; ALICIA CASTRO, d/b/a CHRISTIAN SCRIBING SERVICES, d/b/a ALICIA CASTRO INCOME TAX SERVICE; ERASMO CASTRO, Sr. & Jr.; MELISSA [CASTRO] INFANTE; MAGDALENO INFANTE; UNITED STATES DEPARTMENT of HOMELAND SECURITY; ALFONSO R. DeLEON, District Director for the U.S. Citizenship and Immigration Services; UNITED STATES ATTORNEY GENERAL ALBERTO R. GONZALEZ, | § § § § § § § § § § § § § § § § | |
| Defendants. | § | |

United States District Court
Southern District of Texas
ENTERED

JUN 2 9 2007

Michael N. Milby, Clerk of Court
By Deputy Clerk D Chimod

### OPINION AND ORDER

BE IT REMEMBERED that on June 29, 2007, the Court considered Plaintiffs' Statement of Jurisdiction, Dkt. No. 42, Defendants' Brief Regarding Jurisdiction, Dkt. No. 44, Federal Defendants' Statement Regarding Jurisdiction, Dkt. No. 45, Federal Defendants' Motion to Dismiss Pursuant to Rules 12(b)(1), (2) and 12(b)(6), Dkt. No. 20, and Defendants' Motion to Dismiss, Dkt. No. 21. For the following reasons, Federal Defendants' Motion to Dismiss is hereby **GRANTED**, Dkt. No. 20, and Defendants' Motion to Dismiss is hereby **GRANTED**, Dkt. No. 21.

1

## I. Factual and Procedural Background

Ana Pacheco and Jose Pacheco (collectively "Plaintiffs") commenced this civil action by filing their complaint on May 25, 2006.[1] Dkt. No. 1. The complaint is composed of eight grounds. Grounds ONE through SIX stem from the alleged conduct of Martha N. Martinez; Alicia Castro; Erasmo Castro, Sr.; Erasmo Castro, Jr.; Melissa [Castro] Infante; and Magdaleno Infante (collectively "Private Defendants"). *Id.* at 2–8. Ground SEVEN stems from the alleged conduct of two of the collective Private Defendants: Alicia Castro and Erasmo Castro[2] d/b/a Christian Scribing Services (collectively the "Castros"). Ground EIGHT stems from the alleged conduct of the United States Department of Homeland Security (the "DHS"); Alfonso R. De Leon, District Director of U.S. Citizenship and Immigration Services; and Alberto R. Gonzales, U.S. Attorney General (collectively "Federal Defendants"). *Id.* at 8. Plaintiffs claim that Private Defendants' conduct, forming the basis of the complaint, occurred in Brownsville, Cameron County, Texas, and that Federal Defendants' conduct occurred in their respective offices within the United States of America. Dkt. No. 15, Ex. 1 at 1–2.

### A. Private Defendants

Ana Pacheco is a Mexican citizen, and her husband, Jose Pacheco is a legal permanent resident of the United States of America. Dkt. No. 15, Ex. 1 at 1–2. Plaintiffs needed assistance in obtaining a U.S. immigrant or non-immigrant visa for Ana Pacheco. *Id.* at 3. Apparently, Plaintiffs sought Private Defendants' aid because Private Defendants, all Texas notaries public, allegedly "held themselves out as being able to represent [Plaintiffs] in immigration matters." *Id.* at 2–7. Plaintiffs claim that Private Defendants then proceeded, "either singly, or in concert with each other," to provide Plaintiffs with services in these various immigration matters. *Id.* Plaintiffs contend that

---

[1] Plaintiffs amended their complaint on July 3, 2006. Dkt. No. 15, Ex. 1. Therein, Plaintiffs clarified certain jurisdictional matters pertaining to the location in which the Defendants' alleged conduct occurred. *Compare* Dkt. No. 1, at 1–2, *with* Dkt. No. 15, Ex. 1 at 1–2.

[2] In the original complaint, this claim is against *both* Erasmo Castro, Sr., and Erasmo Castro, Jr. *See* Dkt. No. 1, at 7. However, Plaintiffs' amended complaint does not specify whether the claim is against Erasmo Castro, Sr. or  Erasmo Castro, Jr. Dkt. No. 15, Ex. 1 at 7.

the nature of these service rose to the level of legal representation, which constituted the unauthorized practice of law in violation of Texas[3] and federal law.[4] *See id.* at 2–6.

During the scope of their alleged representation, Private Defendants told Plaintiffs what immigration forms they had to complete in order to receive "certain immigration benefits." *Id.* at 3–5. Plaintiffs maintain that "[s]ome of the immigration forms were not required to be filed by [Plaintiffs]," some forms filed were meant to apply for benefits for which Ana Pacheco was not eligible, and some forms contained "false" and "misleading" information. *Id.* at 3–4. Private Defendants are alleged to have "knowingly caused the delivery of [these] immigration form[s] to the [DHS]" and the U.S. Citizenship and Immigration Services (the "CIS").[5] *Id.* at 5. The representation is alleged to have run from on or about September 1999 through on or about June 8, 2005, when Plaintiffs became aware that Private Defendants were misrepresenting themselves. *Id.* at 2–6. Plaintiffs claim to have paid for Private Defendants' services. *Id.* at 5. But ultimately, they claim not to have received the immigration benefits promised. *Id.* at 2–6.

Additionally, Plaintiffs claim that the Castros laundered the money they illegally obtained from Plaintiffs. *Id.* at 7. The Castros allegedly invested the money in real-estate ventures through a non-profit organization called "Iglesia De Cristo-Tyler St." *Id.* Christian Scribing Services, owned by Alicia and Erasmo Castro, is claimed to be "the successor in interest of the properties of Iglesia De Cristo-Tyler St." *Id.*

As to the collective Private Defendants, Plaintiffs have based Grounds ONE through SIX on the following causes of action: Ground ONE, negligent misrepresentation;[6] Ground TWO, fraud; Ground THREE, negligence predicated on the

---

[3] In support of this claim, Plaintiffs cite Texas Government Code §§ 406.016(d) and 406.017(a)(2), and Texas Penal Code § 38.122.

[4] In support of this claim, Plaintiffs cite 8 U.S.C. §§ 1101 and 1103. They also cite 8 CFR §§ 1.1(i) and (k); 292.1 through 292.6; 1001(i) and (k); 1003; and 1292.1 through 1292.6.

[5] The CIS is a division of the DHS.

[6] Plaintiffs characterize this claim as "misrepresentation." The Court assumes Plaintiffs are basing this claim on Texas' negligent misrepresentation cause of action.

breach of 18 U.S.C. § 1505 (obstruction of proceedings before agencies);[7] Ground
FOUR, breach of implied contract; Ground FIVE, negligence predicated on the breach
of 18 U.S.C. § 1341 (mail fraud); and Ground SIX, 18 U.S.C. § 1964(c) (civil RICO). As
to the Castros, Plaintiffs have based Ground SEVEN on a negligence cause of action
predicated on the breach of 18 U.S.C. § 1956[8] (federal money-laundering) and Texas
Penal Code § 34.01 (Texas money-laundering).

Private Defendants filed a motion to dismiss Plaintiffs' claims pursuant to Rules
12(b)(1), (2), and (6). Dkt. No. 21. To better assess the validity of a dismissal based on
a Rule 12(b)(1) motion, the Court ordered the Parties to brief federal jurisdiction,
specifically under 28 U.S.C. § 1331, the federal-question jurisdiction statute. In their
brief addressing jurisdiction, Plaintiffs generally argue that § 1331 grants this Court
federal-question jurisdiction over their case because "certain state-law claims" against
Private Defendants "implicate significant federal issues." Dkt. No. 42, at 7–8.
Furthermore, Plaintiffs invoke 28 U.S.C. § 1367 as a way for the Court to exercise
supplemental jurisdiction over the state-law claims that do not arise under federal law.
Dkt. No. 15, Ex. 1 at 1. The Court will discuss Plaintiffs' specific federal-question
arguments *infra*.

## B. Federal Defendants

Ground EIGHT of Plaintiffs' complaint is against Federal Defendants. Plaintiffs
do not state a specific cause of action against them, but rather, they make several
general allegations. Essentially, Plaintiffs allege that Federal Defendants, specifically
the DHS (and the CIS), are "complicit" in Private Defendants' illicit dealings with
Plaintiffs. *Id.* at 8. Plaintiffs claim that the CIS "has access to [a] list of accredited

---

[7] In the complaint, Plaintiffs seek to bring a negligence per se cause of action, predicated on breach of 18 U.S.C. § 1505. See Dkt. However, for the sake of accuracy, what they really claim is a Texas state law cause of action for *negligence*. Negligence per se is not itself a cause of action, but actually a way to prove a party's negligence as a matter of law, through the violation of a penal statute. Zavala v. Trujillo, 883 S.W.2d 242 (Tex. Civ. App. 1994).

[8] Plaintiffs' complaint refers to a breach of federal money-laundering law, but does *not* allege the breach of a *specific* federal money-laundering statute. *See* Dkt. No. 15, Ex. 1 at 7. Therefore, the Court will assume the Plaintiff is referring to 18 U.S.C. § 1956, one of the more generally applicable federal money-laundering statutes.

4

organizations and accredited representatives authorized by the Board of Immigration Appeals to represent persons in immigration matters." *Id*. Plaintiffs argue that Federal Defendants have a duty to Plaintiffs, and others similarly situated, to allow only such authorized individuals to engage in representation of others before the CIS. *Id*. This would require the CIS to compare the names of those appearing on its list of accredited representatives against the names of those who attempt to represent others before the CIS. *See id*. Those whose names do not appear on the list should not be allowed to engage in representation. *See id*. According to Plaintiffs, Federal Defendants' complicity in Private Defendants' conduct is apparent since Private Defendants were allowed to continue filing forms and applications on behalf of Plaintiffs, despite the fact that the respective Private Defendants were not on the list of accredited individuals authorized to represent persons in immigration matters. *See id*.

Plaintiffs now seek review of the CIS's decisions to not enforce its pre-existing regulation as to who is authorized to represent others before the agency and to not promulgate new rules "for the detection of fraudulent activities and the unauthorized practice of law" by notaries public before the CIS.[9] *See id*. at 9.

Federal Defendants filed a motion to dismiss Plaintiffs' claims pursuant to Rules 12(b)(1), (2), and (6). Dkt. No. 20. The Parties briefed jurisdiction, and the Plaintiffs argued that federal-court jurisdiction exists under the Administrative Procedure Act (the "APA"). Dkt. No. 42, at 2–7.

---

[9] Plaintiffs' prayer for relief asks "that [the CIS] *promulgate* rules and/or policy and/or procedure for the detection of fraudulent activities and the unauthorized practice of law by Notary Publics [sic] and other unauthorized individuals, or unauthorized organizations upon the intake of immigration applications and to provide for the notification to the Attorney General, or other Agency authorized to act upon the information; the names and addresses of persons and/or organizations engaging in such fraudulent and unauthorized activities as a means to protect immigrants, particularly those who are of limited financial means and are of Hispanic origin as they tend to rely on notary publics [sic] more often than others." Dkt. No. 15, Ex. 1 at 9 (emphasis added). Because Plaintiffs cite regulations already promulgated by the CIS for such purposes, the Court assumes that Plaintiffs also seek review of the CIS's decision not to enforce its pre-existing rules.

## II. Legal Standards

### A. § 1331 Federal-Question Jurisdiction

The United States federal district courts are courts of limited jurisdiction. Le Mieux Bros. v. Tremont Lumber Co., 140 F.2d 387, 389 (5th Cir. 1944); 13 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3522 (2d ed. 1984). They have the power to hear classes of cases only as authorized by Congress. See id. Through 28 U.S.C. § 1331, Congress has granted the district courts general federal-question jurisdiction. Section 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Essentially, based on § 1331's statutory grant of jurisdiction, the district courts have federal-question jurisdiction to hear suits that "arise under" federal law. Id. A suit arises under federal law based on either of two propositions known as the Holmes rule and the Smith rule.

Justice Holmes' rule states that "[a] suit arises under the law that creates the cause of action." American Well Works Co. v. Layne & Bowler Co., 241 U.S. 257, 260 (1916). When federal law provides a cause of action, suits brought under that federal cause of action arise under federal law for purposes of granting district courts with federal-question jurisdiction. The Holmes rule describes the basis for the district courts' jurisdiction over the "vast majority" of federal-question cases.[10] Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 808 (1986); T.B. Harms Co. v. Eliscu, 339 F.2d 823, 827 (2nd Cir. 1964).

The Smith rule was fashioned by the Supreme Court in Smith v. Kansas City Title & Trust Co., 255 U.S. 180 (1921). It states that a suit can also arise under federal law where the plaintiff's right to relief, based on a state law cause of action, turns on the

---

[10] In Justice Holmes' view, a suit raised a federal question only if federal law created a cause of action. But the Supreme Court has long rejected Justice Holmes' position. See e.g. Smith v. Kansas City Title & Trust Co., 255 U.S. 180 (1921). Ultimately, the Holmes rule has come to be known as a jurisdictional principle of inclusion, rather than exclusion. T.B. Harms Co. v. Eliscu, 339 F.2d 823, 827 (2nd Cir. 1964) (Friendly, J.) ("It has come to be realized that Mr. Justice Holmes' formula is more useful for inclusion than for the exclusion for which it was intended.").

construction or application of federal law.[11] *See Smith*, 255 U.S. at 199 ("The general rule is that, where it appears from the [complaint] that the right to relief depends upon the construction or application of [federal law] . . . the District Court has jurisdiction."). This broad proposition, capable of invoking federal-question jurisdiction, has been narrowed by subsequent Supreme Court decisions.

More recently in *Merrell Dow Pharmaceuticals Inc. v. Thompson*, the Supreme Court held that a state cause of action, incorporating as an element the breach of a federal statute, did not arise under federal law, partly because there was no independent private right of action for breach of the federal statute at issue. 478 U.S. 804 (1986). The Supreme Court concluded that the lack of a private right of action under a federal statute was indicative of Congress' intent to deny a federal forum to state causes of action predicated on the breach of that federal statute. *Id.* at 811–14. In other words, if Congress had intended to provide a federal forum for issues involving the breach of a federal standard, it would have provided for a *private* federal cause of action. *See id.* at 812; ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 5.2, at 287 (4th ed. 2003).

But the Supreme Court clarified the *Merrell Dow*-holding in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005). *Merrell Dow* did not make the existence of a private federal cause of action a necessary condition for federal-question jurisdiction. *Id.* at 317. The lack of a private federal cause of action was "relevant to, but not dispositive of, the 'sensitive judgments about congressional intent'" required by § 1331. *Id.* at 318 (quoting *Merrell Dow*, 478 U.S. at 810). Also relevant were any potential, major shifts in the "division of labor" between the federal and state courts. *See id.* at 318–19. In *Merrell Dow*, the Supreme Court noted that "'[t]he violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings.'" *Id.* at 318 (quoting RESTATEMENT (THIRD) OF TORTS

---

[11] Justice Frankfurter referred to the principle behind the *Smith* rule as the "litigation-provoking problem." Textile Workers Union of America v. Lincoln Mills of Ala., 353 U.S. 448, 470 (1957) (Frankfurter, J., dissenting). In determining whether specific state-law based causes of action can arise under federal law, Courts have long-struggled with "the degree to which federal law must be in the forefront of the case and not collateral, peripheral or remote." *Id.*

§ 14 cmt. a (Tentative Draft No. 1, 2001)). "A general rule of exercising federal jurisdiction over state claims resting on federal . . . statutory violations would [ ] have heralded a potentially enormous shift of traditionally state cases into federal courts." *Id.* at 319.  Thus, in fashioning a test for federal-question jurisdiction over "federal issues embedded in state-law claims," the Supreme Court held that "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314.

In summary, a case arises under federal law, thereby invoking federal-question jurisdiction, if it is apparent from a well-pleaded complaint[12] that the plaintiff brings a cause of action created by federal law, or that the plaintiff's right to relief under a state law cause of action turns on the resolution of a question of federal law. *See* Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 27–28 (1983). After *Grable*, a district court has federal-question jurisdiction over cases where state law provides the plaintiff's cause of action only if the claim necessarily raises a federal issue, the federal issue is actually disputed and substantial, and the federal issue is capable of being entertained in a federal forum "without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314.

## B. FRCP 12(b)(1) & 12(b)(6) Dismissal

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party can move to dismiss a claim by challenging the district court's jurisdiction over the subject matter. FED. R. CIV. PRO. 12(b)(1). In defending against a Rule 12(b)(1) motion, the party asserting the district court's subject matter jurisdiction bears the burden of proving it exists. Pettinelli v. Danzig, 644 F.2d 1160, 1162 (5th Cir. 1981). When a Rule 12(b)(1) motion is filed along with motions to dismiss on the merits, a district court should address jurisdictional issues first. Hitt v. City of Pasadena, 561 F.2d 606, 608 (5th Cir.

---

[12] The well-pleaded complaint rule requires that a federal question appear on the face of the plaintiff's complaint. Louisville & Nashville Railroad v. Mottley, 211 U.S. 149 (1908). Otherwise, the suit does not arise under federal law. *See id.* The rule is not satisfied if on the face of the complaint, the plaintiff merely raises an anticipated federal defense. *See id.* at 152.

1977) (per curium); Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). This is meant to prevent a court lacking jurisdiction over the claims from prematurely dismissing them with prejudice. *Ramming*, 281 F.3d at 161 (citing *Hitt*, 561 F.2d at 608). Because a court does not reach the merits when dismissing claims under Rule 12(b)(1), the party whose claims are accordingly dismissed will not necessarily be precluded from pursuing those claims in a court capable of exercising proper jurisdiction. *Id.*; FED. R. CIV. PRO. 41(b).

Under Rule 12(b)(6), a party can move to dismiss a complaint because it does not state a legally cognizable claim. *Ramming*, 281 F.3d at 161; FED. R. CIV. PRO. 12(b)(6). Motions to dismiss for failure to state a claim are viewed with disfavor based on the principle that "the primary objective of the law is to obtain a determination of the merits of any claim." Rennie & Laughlin, Inc. v. Chrysler Corp., 242 F.2d 208, 213 (9th Cir. 1957) (Barnes, J.). Therefore, the federal courts have adopted a rigorous standard to determine the sufficiency of a complaint: "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46 (1957); *see also, Ramming*, 281 F.3d at 161. This standard requires that the complaint be construed in a light most favorable to the plaintiff, and that allegations in the complaint be taken as true. *Ramming*, 281 F.3d at 161 (citing Oppenheimer v. Prudential Securities Inc., 94 F.3d 189, 194 (5th Cir. 1996)). Further, the plaintiff should be given every opportunity to state a claim. *Id.* (citing *Hitt*, 561 F.2d at 608).

## III. Discussion

The Court will now consider the Parties' arguments and rule on whether Plaintiffs' respective claims should be dismissed pursuant to Rules 12(b)(1) or 12(b)(6). The Court has categorized Plaintiffs' claims against Private Defendants into three groups and will discuss whether they are capable of sustaining federal jurisdiction.

## A. Grounds TWO and FOUR

Grounds TWO and FOUR, claims of fraud and "breach of implied contract," respectively, present Texas state-law causes of action. Plaintiffs do not explicitly argue that these claims arise under federal law. Regardless, after scrutinizing the pleadings and the alleged conduct on which they are based, the Court holds that these claims do not raise a federal issue.[13] Accordingly, these claims alone cannot sustain federal jurisdiction. They will be dismissed pursuant to Rule 12(b)(1) unless the court can exercise supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367(a). This is only possible, however, if Plaintiffs have presented at least one other claim over which the Court has original jurisdiction.

## B. Grounds ONE, THREE, FIVE, and SEVEN

Grounds ONE, THREE, FIVE, and SEVEN present state-law claims which Plaintiffs *explicitly* argue to arise under federal law. However, the Court disagrees. The Court will now discuss why these respective claims fail to invoke federal-question jurisdiction.

### 1. Ground ONE, Negligent Misrepresentation

Ground ONE of Plaintiffs' complaint brings a claim of negligent representation against the Private Defendants. This is based on Private Defendants' alleged lie about "being able to represent [Plaintiffs] in immigration matters." However, this state-law

---

[13] The elements of a Texas state-law fraud claim include: 1) that a material misrepresentation was made that was false; 2) that it was either known to be false when made or was asserted without knowledge of its truth; and 3) that it was intended to be acted on, was relied on, and caused injury. Amouri v. Southwest Toyota, Inc., 20 S.W.3d 165, 168–69 (Tex. App. 2000). The complaint alleges that Private Defendants "told [Plaintiffs] it would just be a matter of time before Ana [Pacheco] had her immigrant and/or non-immigrant visa." Dkt. No. 15, Ex. 1 at 3. Because Ana Pacheco did not receive these promised benefits, Plaintiffs essentially claim that Private Defendants *lied* to them. This lie does not raise a federal issue, let alone a substantial one.

The elements of a breach of contract claim include: 1) the existence of a valid contract; 2) performance or tendered performance by the plaintiff; 3) breach of the contract by the defendant; and 4) damages sustained by the plaintiff as a result of the breach. Apache Corp. v. Dynegy Midstream Services, Ltd. Partnership, 214 S.W.3d 554, 560 (Tex. App. 2006). An *implied* contract can arise "from the acts and conduct of the parties, it being implied from the facts and circumstances that there was a mutual intention to contract." Haws & Garrett General Contractors, Inc. v. Gorbett Bros. Welding Co., 480 S.W.2d 607, 609 (Tex. 1972). In the present case, Plaintiffs argue that the conduct described above gave rise to an implied contract, and that it was subsequently breached when Ana Pacheco did not receive her benefits. But again, this does not raise a federal issue.

claim fails to arise under federal law because it does not necessarily raise a federal issue as required by *Grable*.

In *Grable*, the Supreme Court held that a state-law quiet title claim presented a federal question. Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., 545 U.S. 308 (2005). In order to satisfy Grable & Sons Metal Products, Incorporated's tax delinquency, the IRS seized its real-property it owned in Michigan. *Id.* at 310. Under 26 U.S.C. § 6335, the IRS was required to provide Grable with notice of the seizure, and it did so through certified mail. *Id.* The IRS then sold the property to Darue Engineering & Manufacturing. *Id.* Five years later, Grable brought a quiet-title action against Darue in state court. *Id.* at 311. One of the elements of the claim was proper notice of the property's seizure, and Grable argued that § 6335(a) required the IRS to provide notice through personal service, rather than certified mail. *Id.* Darue removed to federal court, arguing that this claim presented a federal question. *Id.* The Supreme Court agreed, laying down the test described *supra*. *See Text* at 8. In pertinent part, it held that a federal issue was necessarily raised because "Grable premised its superior title claim on the IRS's failure to give adequate notice, as defined by federal law," and "[w]hether Grable received notice [was] an essential element of its quiet title claim . . . ." *See id.* at 314–15.

In the present case, the elements of a Texas negligent misrepresentation claim include: 1) information provided by the defendant in the course of business, or in a transaction in which the defendant has a pecuniary interest; 2) the information is false; 3) the defendant's failure to exercise reasonable care or competence in obtaining or communicating the information; 4) justifiable reliance on the information by the plaintiff; and 5) damages suffered by the plaintiff which are proximately caused by the reliance. Johnson v. Baylor University, 188 S.W.3d 296 (Tex. Civ. App. 2006). The Court need not directly construe or apply federal law in order to establish an element of Plaintiffs' state-law claim. Therefore, this claim does not turn on an issue of federal law. Private Defendants allegedly lied to Plaintiffs about being authorized to practice law before a

11

federal agency, but the fact that a false statement was made is what provides the basis for the cause of action, not the context in which the false statement was made.[14]

However, Plaintiffs essentially argue that Private Defendant's alleged lie depends on whether they were authorized to practice law in terms of Texas unauthorized practice of law statues and federal law. According to Plaintiffs, this also depends on whether the Private Defendants' actions as notaries public, such as in selecting CIS forms rather than merely assisting Plaintiffs to fill-in blank spaces, constituted the practice of law before the CIS, as defined by federal regulations.

First of all, in terms of Texas law, Plaintiffs point to Texas Government Code §§ 406.016(d) and 406.017, statutes which criminalize the unauthorized practice of law. (collectively the "Texas UPL statutes"). Section 406.016(d) states that "[a] notary public not licensed to practice law in [Texas] may not give legal advice or accept fees for legal advice." Section 406.017 makes it an offense for a notary public not licensed to practice law in Texas to "solicit[ ] or accept[ ] compensation to prepare documents for or otherwise represent the interest of another in a judicial or administrative proceeding, including a proceeding relating to immigration to the United States, United States citizenship, or related matters."

Furthermore, Plaintiffs point to 8 U.S.C. §§ 1101 and 1103 and several sections from Title 8 of the Code of Federal Regulations,[15] all of which Plaintiffs argue provide the federal law basis under which this case arises.[16] Generally, these Title 8 sections of the Code of Federal Regulations regulate who can represent parties before the CIS and what actions rise to the level of legal representation. For example, under § 292.1(3)(i),

---

[14] Because this case does not necessarily raise a federal issue, the Court need not engage in analysis of the other *Grable* prongs. However, the Court has doubts as to the "substantiality" of the federal issue in question, if any. Furthermore, the Court believes that granting federal-question jurisdiction in this case would have the potential to upset the "congressionally approved balance of federal and state responsibilities."

[15] These DHS and CIS agency regulations include 8 CFR §§ 1.1(i) and (k); 292.1 through 292.6; 1001(i) and (k); 1003; and 1292.1 through 1292.6.

[16] Title 8 U.S.C. § 1101 is the definitional section of the Immigration and Nationality Act. Section 1103 describes the powers and duties of the Secretary of Homeland Security, the Under Secretary, and the Attorney General with regards to immigration and naturalization matters. Though Plaintiffs refer to these sections generally, Plaintiffs do not specify how they relate to the negligent misrepresentation claim.

12

"any reputable individual of good moral character" is entitled to represent a person entitled to representation, so long as he appears "without direct or indirect remuneration and files a written declaration to that effect." Section 1.1(i) states that to "practice" before the CIS means to appear "in any case, either in person or through the preparation or filing of any brief or other document . . . on behalf of another person." Under § 1.1(k), "preparation" means "the study of the facts of a case and the applicable laws, coupled with the giving of advice and auxiliary activities, including the incidental preparation of papers." However, § 1.1(k) excludes the "lawful function of a notary public or service consisting solely of assistance in the completion of blank spaces on printed [CIS] forms," so long as payment for such services is nominal and the notary "does not hold himself out as qualified in legal matters or in immigration and naturalization process."

Plaintiffs have pointed to both the Texas UPL statutes and federal regulations as bases for establishing the illegality of Private Defendants' conduct in representing them before the CIS. This provides an alternative theory for why Plaintiffs' claim does not raise a federal issue. The Supreme Court has held that "[i]f on the face of a well-pleaded complaint there are reasons completely unrelated to the provisions and purposes of [federal law] why the [plaintiff] may or may not be entitled to the relief it seeks," the claim fails to arise under federal law. *See* Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 810 (1988). In other words, "when a claim can be supported by alternative and independent theories—one of which is state law theory and one of which is a federal law theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim." Rains v. Criterion Systems, Inc., 80 F.3d 339, 346 (9th Cir. 1996); *see also* Willy v. Coastal Corp., 855 F.2d 1160, 1170 (5th Cir. 1988) (holding that Plaintiff's state-law claim for wrongful discharge did not give rise to federal subject-matter jurisdiction because it was "supported by alternative theories, first that his discharge was wrongful because it was on account of his attempt to cause employer compliance with or refusal to violate federal law, and second that it was wrongful because it was on account of his attempt to cause his employer compliance with or refusal to violate state law."); *see also*

*Mulcahey v. Columbia Organic Chemicals Co.*, 29 F.3d 148 (4th Cir. 1994) (holding that federal subject-matter jurisdiction did not exist over plaintiff's state-law negligence per se claim where a federal environmental statute stated an alternative theory of liability to local and state statutes).

In the present case, Plaintiffs rely on the Texas UPL statutes as an alternative state-law basis for establishing the illegality of Private Defendants' alleged conduct. Section 406.016(d) alone, which provides that "[a] notary public not licensed to practice law in [Texas] may not give legal advice or accept fees for legal advice," acts as a wholly independent state-law basis for establishing any alleged illegal conduct. Because of this alternate state-law theory, Private Defendants' state-law claim for negligent misrepresentation does not necessarily raise a federal issue.

In summary, Ground ONE does not arise under federal law, and the Court holds that Plaintiffs' state law negligent misrepresentation claim does not necessarily raise an issue of federal law. In the alternative, if Plaintiff's state-law claim could indeed hinge on interpretation of the cited sections of Title 8 of the CFR, the Court holds that this case does not necessarily raise a federal issue because the Texas UPL statutes act as alternative and independent theories of liability.

## 2. Ground THREE, Negligence (obstruction of proceedings)

Ground THREE of Plaintiffs' complaint brings a state-law negligence cause of action, predicated on breach of 18 U.S.C. § 1505 for obstruction of official proceedings before a federal agency. This is based on Private Defendants' alleged conduct in filing immigration forms for Ana Pacheco which included false or misleading information. However, this state-law claim fails to arise under federal law based on the standards set in *Merrell Dow* and *Grable*.

In *Merrell Dow*, the Supreme Court held that a state-law negligence per se claim, predicated on breach of a federal statute, did not arise under federal law. There, several Plaintiffs brought state actions in Ohio-state court against Merrell Dow Pharmaceuticals, Inc. The Plaintiffs claimed that Merrell Dow's drug, Bendectin, ingested by the plaintiff-mothers during pregnancy, caused birth defects in their children. *Id.* at 805. One count of the complaint alleged that the drug was "misbranded"

in terms of the Federal Food, Drug, and Cosmetic Act, and this created a rebuttable presumption of negligence. *Id.* at 805-06. Merrell Dow removed to federal court, arguing that this state-law negligence claim arose under federal law because it hinged on interpretation of the federal misbranding statute. *Id.* at 806. The Supreme Court held there was no federal-question jurisdiction. Congressional intent to open the federal courts to state-law causes of action was an important factor to consider when granting federal-question jurisdiction under § 1331. *Id.* at 812. The fact that there was no private right of action for breach of the misbranding statute was indicative of Congress' intent. *Id.* The Supreme Court held that to grant federal-question jurisdiction and "provide remedies for violations of that federal statute solely because the violation of the federal statute is said to be a 'rebuttable presumption' or a 'proximate cause' under state law, rather than a federal action under federal law," would "flout, or at least undermine," Congress' intent. *Id.*

In the present case, Plaintiffs have brought a state-law negligence cause of action, using the breach of a federal statute to establish negligence per se. However, just as there was no private right of action for the federal statute at issue in *Merrell Dow*, the federal courts have held that there is no private right of action for breach of § 1505 for obstruction of agency proceedings. *See e.g.*, Hamilton v. Reed, 29 Fed.Appx. 202, 204 (6th Cir. 2002). Of course, as the Supreme Court held in *Grable*, the lack of a private right of action under a federal statute is only "relevant to, but not dispositive of" Congress' intent to provide a federal forum for state-law claims turning on an issue of federal law. Also relevant are any potential, major shifts in the division of labor between the federal and state courts. In *Grable*, the Supreme Court noted that "it is the rare state quiet title action that involves contested issues of federal law" and "jurisdiction over actions like Grable's would not materially affect, or threaten to affect, the normal currents of litigation." *Grable*, 545 U.S. at 320.

Granting federal-question jurisdiction to state-law negligence claims predicated on breach of a criminal statute like § 1505 would certainly case a major shift in the "normal currents of litigation" between the state and federal courts. For these reasons, the Court holds that Ground THREE does not arise under federal law.

15

### 3. Ground FIVE, Negligence (mail fraud)

Ground FIVE of Plaintiffs' complaint brings a state-law negligence cause of action, predicated on breach of 18 U.S.C. § 1341 for mail fraud. This is based on Private Defendants' alleged conduct in mailing immigration forms to the CIS as part of "a scheme to obtain money or property from [Plaintiffs]." However, this state-law claim also fails to arise under federal law based on the standards set in *Merrell Dow* and *Grable*.

First, the Court notes that the Fifth Circuit has not recognized a private right of action for breach of § 1341, the mail fraud statute. Bell v. Health-Mor, Inc., 549 F.2d 342 (5th Cir. 1977). As discussed *supra*, granting federal-question jurisdiction to state-law negligence claims predicated on breach of § 1341 would cause a major shift in the "normal currents of litigation" between the state and federal courts. For these reasons, the Court holds that Ground FIVE does not arise under federal law.

### 4. Ground SEVEN, Negligence (money laundering)

Ground SEVEN of Plaintiffs' complaint brings a state-law negligence cause of action, predicated on breach of 18 U.S.C. § 1956 for money laundering. This claim is brought specifically against the Castros, and it is based on their alleged conduct in "obtain[ing] money through illegal means in violation of state and/or federal law" and "invest[ing] the money in real estate [sic] through a non profit [sic]." However, this state-law claim also fails to arise under federal law based on the standards set in *Merrell Dow* and *Grable*.

First, the Court notes that the federal courts have not recognized a private right of action for breach of § 1956, the money laundering statute. Dubai Islamic Bank v. Citibank, N.A., 126 F. Supp. 2d, 659 (S.D.N.Y. 2000). As discussed *supra*, granting federal-question jurisdiction to state-law negligence claims predicated on breach of § 1956 would cause a major shift in the "normal currents of litigation" between the state and federal courts. For these reasons, the Court holds that Ground SEVEN does not arise under federal law.

16

### 5. Summary

Accordingly, because the four preceding claims do not arise under federal law, thus failing to invoke federal-question jurisdiction, they will be dismissed pursuant to Rule 12(b)(1) unless the Court can exercise supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367(a).

### C. Ground SIX, Civil RICO

#### 1. Civil RICO Pleadings

Title 18 U.S.C. § 1962 of the Racketeering Influenced and Corrupt Organizations Act ("RICO") makes it a federal crime to perform certain acts which involve conducting an enterprise through a pattern of racketeering activity.[17] *See generally,* 18 U.S.C. § 1962. Under RICO § 1964(c), what is commonly referred to as the "civil RICO" provision, Congress has also provided for a private federal cause of action to "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c); Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 508 (1985). Section 1964(c) essentially sets out the standing requirements a plaintiff must establish to bring a civil RICO claim. *See* Price v. Pinnacle Brands, Inc., 138 F.3d 602, 606 (5th Cir. 1998).

Despite the rigorous standard of a Rule 12(b)(6) motion, a plaintiff must state a claim "with enough clarity to enable a court or opposing party to determine whether or not a claim is alleged." Elliott v. Foufas, 867 F.2d 877, 880 (5th Cir. 1989). Accordingly, in order to properly plead a civil RICO claim, the plaintiff must allege facts sufficient to first establish standing under § 1964(c), and then the elements of the § 1962 claim. *See* Price v. Pinnacle Brands, Inc., 138 F.3d 602, 606 (5th Cir. 1998). To establish civil RICO standing, the plaintiff must show 1) injury to his business or property, 2) caused by the defendant's RICO violation. *See id.* The elements of a § 1962 RICO claim

---

[17] Section 1962 has four subsections. Under § 1962(a), "a person who has received income from a pattern of racketeering cannot invest that income in an enterprise." In re Burzynski, 989 F.2d 733, 741 (5th Cir. 1993) (restating § 1962's subsections). Under § 1962(b), "a person cannot acquire or maintain an interest in an enterprise through a pattern of racketeering." *Id.* Under § 1962(c), " a person who is employed by or associated with an enterprise cannot conduct the enterprise's affairs through a pattern of racketeering." *Id.* And under § 1962(d), "a person cannot conspire to violate subsections (a), (b), or (c)." *Id.*

17

involve: 1) a person who engages in 2) a pattern of racketeering activity 3) connected to the acquisition, establishment, conduct, or control of an enterprise.[18] St. Paul Mercury Ins. Co. v. Williamson, 224 F.3d 425, 439 (5th Cir. 2000). This outline is "deceptively simple" because each element is "a term of art which carries its own inherent requirements of particularity." Elliott, 867 F.2d at 880.

For instance, in establishing a pattern, the plaintiff must show the existence of at least two predicate acts of racketeering activity within a ten-year period. See 18 U.S.C. § 1961(5). Federal mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343) can act as RICO predicates. 18 U.S.C. § 1961(1)(B). When such allegations of fraud act as RICO predicates, the pleading requirement of Federal Rule of Civil Procedure 9(b) apply. Tel-Phonic Services, Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1138–39 (5th Cir. 1992). Under Rule 9(b), a party can move to dismiss a claim of fraud when it is not pleaded with particularity. "At a minimum, Rule 9(b) requires allegation of the particulars of 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" Id. at 1139 (quoting 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1297, at 590 (1990)). However, allegations relating to defendant's "conditions of the mind," such as malice, intent, and knowledge, may be pleaded generally. FED. R. CIV. PRO. 9(b).

## 2. Civil RICO Discussion

Congress has provided for a federal private right of action under 18 U.S.C. § 1964(d). Therefore, Plaintiff's civil RICO claim arises under federal law because it satisfies the Holmes rule. However, Plaintiffs have not pled their civil RICO claim with the required specificity, and it will be dismissed pursuant to Rule 12(b)(6).

The Court first notes that Plaintiffs' civil RICO claim is predicated on breach of § 1962's four subsections. Dkt. No. 15, Ex. 1 at 1, 7. However, Ground SEVEN's general allegations do not treat the alleged violations of each of § 1962's subsections as distinct RICO claims. Regardless, Plaintiffs have failed to properly plead the all the basic elements, discussed supra, which are applicable to each of § 1962's subsections.

---

[18] These are the basic elements a plaintiff must show for any of § 1962's four subsections. St. Paul Mercury Ins. Co. v. Williamson, 224 F.3d 425, 439 (5th Cir. 2000).

Though Plaintiffs have adequately identified the styled-Private Defendants as "persons" for purposes of establishing the RICO elements, they have not adequately alleged a "pattern of racketeering activity," nor have they identified an "enterprise."

In the Fifth Circuit, a pattern of racketeering activity has two elements: "1) predicate acts–the requisite racketeering activity, and 2) a pattern of such acts." In re Burzynski, 989 F.2d 733, 742 (5th Cir. 1993). In the present case, Plaintiffs attempt to show instances of federal mail fraud as predicate acts. But they have failed to plead such alleged acts of fraud with the required specificity.

When referring to the identity of the person making the misrepresentation, Plaintiffs state that it was "[e]ach [Private Defendant] either alone or in concert with another." Dkt. No. 15, Ex. 1 at 6. As for the contents of the misrepresentation, Plaintiffs generally allege that Private Defendants "held themselves out as being able to represent [Plaintiffs] in immigration matters," though they were not so "authorized." Id. Plaintiffs also make general allegations that some of the forms Private Defendants "knowingly" caused to be delivered to the DHS and the CIS contained "false" and "misleading" information.[19] Id. at 4–5. Furthermore, though Plaintiffs have attached several exhibits to the complaint which provide proof that some of the particular Private Defendants did indeed notarize some forms for Plaintiffs on particular dates, Plaintiffs make no specific allegations that those particular forms were "prepared," in a legal sense, by the Private Defendants, nor that those particular forms contain "false" or "misleading" information. See e.g., Dkt. No. 15, Exs. 2–4. As for when these alleged instances of fraud occurred, Plaintiffs simply state that Private Defendants "engaged in at least two of these activities from October 1999 to [June 8, 2005]." See Dkt. No. 15, Ex. 1 at 6. Again, the attached exhibits indicate Private Defendants notarized forms for Plaintiffs on particular dates, but there is no indication these forms contained misrepresentations. Similarly, and for these reasons, Plaintiffs have failed to properly allege a "pattern" of these predicate acts of "racketeering activity."

---

[19] These particular allegations do not appear in Plaintiffs' "RICO statement," but appear elsewhere in the complaint.

19

Finally, though Plaintiffs have identified the persons involved in an alleged scheme "to obtain money or property from [Plaintiffs]," they have failed to plead specific facts establishing the existence of an "enterprise." RICO enterprises may consist of: 1) a legal entity, such as a corporation, or 2) an "association-in-fact," which can include "any union or group of individuals." 18 U.S.C. § 1961(4); United States v. Turkette, 452 U.S. 576 (1981). Plaintiffs do not allege that a legal entity served as the enterprise. In the styling of the case, Plaintiffs allege that particular Private Defendants purport to "do business as" certain corporations. But Plaintiffs never make any allegation that any one of these corporations serve as the overriding RICO enterprise. Plaintiffs do allege that "each [Private Defendant] either alone or in concert with another have engaged in at least two [predicate acts]." However, that is the only statement which could be construed to allege an "association-in-fact." Regardless, this is a "merely conclusory" allegation; no specific facts, or even allegations, have been pled to show the existence of the association's organizational characteristics, such as "a hierarchical or consensual decision-making structure," nor its "continuity—that the association exist[s] for any purpose other than to commit the predicate offenses." *Elliott*, 867 F.2d at 881.

For these reasons, Ground SIX, Plaintiffs' civil RICO claim, will be dismissed pursuant to Rule 12(b)(6).

### D. Summary

Plaintiffs have failed to establish federal-question jurisdiction based on counts ONE through FIVE and SEVEN. Furthermore, although their civil RICO claim is capable of providing for federal-question jurisdiction, it is dismissed under Rule 12(b)(6). Because the civil RICO claim has been dismissed, there is no claim left to sustain federal jurisdiction. Therefore, the Court will exercise its discretion under 28 U.S.C. § 1367(c)(3), and decline to exercise jurisdiction over the state-law claims, Grounds ONE through FIVE and Ground SEVEN.[20]

---

[20] The Court notes that under 28 U.S.C. § 1367(a), it is possible that Plaintiffs' remaining state-law claims against Private Defendants could be joined to the claim against Federal Defendants. However, the Court refrains from ruling on this issue because the claims against Federal Defendants will also be dismissed pursuant to Rule 12(b)(6).

20

## E. Federal Defendants

The Court will now consider whether Plaintiffs' sought-after review of the CIS's agency actions should be dismissed pursuant to Rules 12(b)(1) or 12(b)(6).[21] As discussed *supra*, Plaintiffs' pleas can be interpreted as seeking review of the CIS's decisions to not enforce its pre-existing regulations as to who is authorized to represent others before the agency and to not promulgate new rules "for the detection of fraudulent activities and the unauthorized practice of law" by notaries public before the CIS. However, Plaintiffs have no standing to challenge the decision, and the Court must dismiss this claim pursuant to Rule 12(b)(6).

To establish standing before an agency, three requirements must be met. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). First, the plaintiff must have suffered an injury-in-fact. *Id.* at 560. This injury must be concrete and particularized, rather than abstract and indefinite. *Id.* Next, there must be a causal connection between the injury-in-fact and the challenged agency action. *Id.* Finally, it must be likely, rather than speculative, that granting the relief the Plaintiff seeks will redress the injury. *Id.*

Plaintiffs lack standing before the agency due to a lack of redressability. Plaintiffs' complaint can be construed to assert that Federal Defendants caused Plaintiffs a procedural injury—Federal Defendants denied Plaintiffs Due Process because Federal Defendants failed to check their list of accredited representatives and allowed Private Defendants to represent Plaintiffs before the CIS. However, in seeking a remedy, Plaintiffs do not seek review of the CIS's decision not to follow its codified procedures in Plaintiffs' particular case. They ask that the CIS enforce its owns rules for the sake of others similarly situated to Plaintiffs, particularly those who "tend to rely on notary publics [sic] more often than others." Dkt. No. 15, Ex. 1 at 9. The obvious disconnect is that were the CIS to enforce its rules from now on, assuming they do not do so already, Plaintiffs' particular procedural injury would not be redressed. The promulgation of new rules would likewise fail to redress the injury.

---

[21] The Court recognizes that Plaintiffs' prayer for relief could be construed as seeking an affirmative or mandatory injunction against the CIS, requiring it to promulgate and enforce the rules previously discussed. However, this does not affect the Court's analysis.

## IV. Conclusion

Plaintiffs have failed to meet their burden and establish federal-question jurisdiction over Grounds ONE, TWO, THREE, FOUR, FIVE, and SEVEN. Plaintiffs have also failed to plead Ground SIX with the required specificity. Finally, in regards to Ground EIGHT, Plaintiffs have failed to establish standing. For these reasons, Federal Defendants' Motion to Dismiss Pursuant to Rules 12(b)(1), (2) and 12(b)(6) is hereby **GRANTED**, Dkt. No. 20, and Defendants' Motion to Dismiss is hereby **GRANTED**, Dkt. No. 21.

DONE in Brownsville, Texas, this day of June, 2007.


Hilda G. Tagle
United States District Judge